UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
GARY LABARBERA, THOMAS GESUALDI,          :
LOUIS BISIGNANO, ANTHONY PIROZZI,         :
DOMINICK MARROCCO, FRANK FINKEL,          :
JOSEPH FERRARA, MARK HERBST, THOMAS       :    **OPINION AND ORDER ADOPTING**
PIALI and DENISE RICHARDSON, as Trustees and :    **IN PART AND MODIFYING IN**
Fiduciaries of the Local 282 Welfare, Pension, :    **PART REPORT AND**
Annuity, Job Training, and Vacation and Sick Leave :    **RECOMMENDATION**
Trust Funds,                              :    08-CV-3274 (DLI) (ALC)
                                          :
                    Plaintiffs,           :
                                          :
                - against -               :
                                          :
UNITED CRANE AND RIGGING SERVICES, INC., :
                                          :
                    Defendant.            :
-------------------------------------------------------------------x
GARY LABARBERA, THOMAS GESUALDI,          :
LOUIS BISIGNANO, ANTHONY PIROZZI,         :
DOMINICK MARROCCO, FRANK FINKEL,          :
JOSEPH FERRARA, MARK HERBST, THOMAS       :    **OPINION AND ORDER ADOPTING**
PIALI and DENISE RICHARDSON, as Trustees and :    **IN PART AND MODIFYING IN**
Fiduciaries of the Local 282 Pension Trust Fund, :    **PART REPORT AND**
                                          :    **RECOMMENDATION**
                    Plaintiffs,           :    08-CV-3983 (DLI) (ALC)
                                          :
                - against -               :
                                          :
MARIAN DOUGLAS SMITH,                     :
                                          :
                    Defendant.            :
-------------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiffs, trustees and fiduciaries of the Local 282 Pension Trust Fund, brought these

actions against United Crane and Rigging Services ("United") and Marian Douglas Smith,

seeking to obtain ERISA damages. Smith owned and was the sole principal of non-parties

Unique Rigging Corp. and Unique Warehousing Corporation (collectively "Unique"). Smith

also owns the property that was Unique Rigging's principal place of business (the "Property").

1

In 2001, Plaintiffs brought an action against Unique Rigging for unpaid contributions. Plaintiffs obtained a judgment, but have not been successful in enforcing the judgment. In 2007, Unique Rigging again stopped making the appropriate contributions, and filed for bankruptcy protection. During the pendency of the bankruptcy proceedings, United was formed and began operating on the Property.

In the complaint against United, Plaintiffs, on a theory of successor liability, attempt to enforce a 2006 judgment obtained against Unique for unpaid ERISA contributions. In the complaint against Smith, Plaintiffs allege that, pursuant to 29 U.S.C. § 1302(b)(1), Smith is jointly and severally liable for Unique's more recent 2007 withdrawal from the fund.

On December 4, 2009, in the action against United, Plaintiffs filed a motion for summary judgment. (Docket Entry 16, in 08-CV-3274.) On January 15, 2010, in the action against Smith, the parties filed cross-motions for summary judgment. (Docket Entries 13, 14, in 08-CV-3983.) On June 23, 2010, the court referred the motions to the Hon. Andrew L. Carter, U.S.M.J. On September 10, 2010, Judge Carter issued a Report and Recommendation ("R&R") wherein he recommended that the court: (1) deny plaintiff's motion for summary judgment against United for lack of standing; (2) order the parties in the United action to show cause why the case should not be dismissed for lack of subject matter jurisdiction; and (3) deny the cross-motions in the action between Smith and Plaintiffs because there is an issue of fact regarding whether Smith received notice of Plaintiffs' intention to hold him liable for withdrawal liability.

Plaintiffs object to the magistrate judge's recommendations and argue that: (1) Plaintiffs have standing to assert successorship and alter ego claims; (2) the court properly has subject matter jurisdiction over the claims against United; and (3) Plaintiffs properly provided Smith with notice of Plaintiffs' withdrawal liability claim. (Plaintiffs' Objections to the R&R, Docket

Entry 25 in 08-CV-3274, and Docket Entry 24 in 08-CV-3983 ("Pl. Obj.").) Plaintiffs therefore contend that summary judgment should be granted in their favor against both United and Smith. Defendants have submitted a response to Plaintiffs objections, and argue that the magistrate judge's conclusions were correct. (Response to Plaintiffs' Objections, Docket Entry 26 in 08-CV-3274, and Docket Entry 25 in 08-CV-3983 ("Def. Resp.").)

Subsequent to the filing of objections in these cases, Richard E. O'Connell, Chapter 7 trustee for Unique in a case pending in the United States Bankruptcy Court for the Eastern District of New York, made a motion to intervene in the action against United. (Docket Entries 28, 34.) The trustee argues that it seeks to intervene to protect "his right to release claims asserted by the Trustees and Fiduciaries of the Local 282 Funds" against United. (Docket Entry 28, at 1.) United opposes the motion to intervene as untimely and without basis.

For the reasons set forth below, the Report and Recommendation is modified in part and adopted in part. Furthermore, the motion to intervene is denied as moot.

## DISCUSSION

### A.    Standard of Review

When no objections to an R&R are made, the court may adopt the R&R if "there is no clear error on the face of the record." *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005) (citation omitted). "The clearly-erroneous standard also applies if a party makes only conclusory or general objections, or simply reiterates his original arguments." *United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) (citation and internal quotation marks omitted). When specific objections are made, a district judge must make a *de novo* determination with respect to those parts of the R&R to which the party objects. The district court may then "accept, reject, or modify the recommended decision, receive further

evidence, or recommit the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980).

**B.      Claim Against Defendant Smith**

Plaintiffs are seeking from Smith, as the sole proprietor of a real estate leasing business in common control with Unique, payment of $340,485 in withdrawal liability incurred by Unique in 2007.  The two issues raised in the parties' summary judgment motions were whether Smith is an employer under ERISA and, if so, whether Smith received the required statutory notice of withdrawal liability.   In the R&R, the magistrate judge concluded that Smith should be considered an employer for the purposes of withdrawal liability.  (R&R at 16-18.)  Smith was the sole owner of Unique and of the property Unique used, and he and Unique therefore constitute a trade or business under common control for withdrawal liability purposes.  There have been no objections to this finding, and the court concurs with this finding.

The magistrate judge further recommended denying Plaintiffs' motion for summary judgment because there was an issue of fact regarding whether Smith received the required notice.  Plaintiffs object to this conclusion.  The court therefore reviews this claim *de novo*.

The MPPAA provides a comprehensive statutory scheme governing withdrawal from multiemployer pension plans. When an employer withdraws from a plan, the plan sponsor must determine the amount of liability and notify the employer of the amount "as soon as practicable" after withdrawal. *See* 29 U.S.C. §§ 1382, 1399(b)(1).  "The MPPAA does not specify the form that this notification is to take, or mandate a particular template that it must conform to." *Amalgamated Lithographers of America v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 224-25 (S.D.N.Y 2009).  "All that is required is that the plan gives the employer the necessary information," which includes the amount of liability and the schedule for payment, and demand

payment in accordance with the schedule. *Id.* at 225. Where, as here, the entities are under common control for the purposes of withdrawal liability, "'[n]otice to one member of the control group is considered as notice to all members.'" *Id.* (quoting *Trs. of Amalgamated Ins. Fund v. Saltz*, 760 F. Supp. 55, 58 (S.D.N.Y. 1991)).

Plaintiffs claim that they mailed the Notice of Default and Withdrawal Liability Letter to the Property, and they contend that it was received by United, the occupant of the Property at the time. Plaintiffs argue that, because United and Smith are part of the same control group, notice to United is sufficient notice to Smith. To support their assertion that United received the notice, Plaintiffs provided two unsigned letters, dated June 26, 2008 and July 3, 2008, and a return receipt, dated July 7, 2008 and signed by "T. Bowen." Smith and United both deny receipt of the letters or knowledge of the person who signed the one return receipt. As the magistrate judge pointed out, it is not clear which of the two letters corresponds to the receipt, and of the two, only the June 26, 2008 letter contains the required payment schedule.

In response, Plaintiffs point to three letters that were submitted in conjunction with Smith's motion to dismiss: the same June 26, 2008 and July 3, 2008 letters provided by Plaintiffs, and a longer July 3, 2008 letter that contained the required payment schedule. (Pl. Obj. 7 n.6 (citing Decl. of James P. Clark, Ex. C.)) Plaintiffs argue that the July 3, 2008 letter with the schedule proves that, regardless of whether the return receipt was for the June 26, 2008 letter or July 3, 2008 letter, the required payment schedule was included. (Pl. Obj. 7 n.6.) However, there was no return receipt attached to any of the letters in Smith's submission, and there is no basis to show that the return receipt provided by Plaintiffs is applicable to the July 3, 2008 letter submitted by Smith.

Despite the ambiguity regarding Smith's notice through the letters, it is undisputed that Smith answered the complaint, and thus received a copy of it. Plaintiffs claim that the complaint itself provides sufficient notice. "Several courts have held that the filing of a civil complaint can constitute sufficient notice under § 1399." *Unz*, 670 F. Supp. 2d at 225 (citing additional cases); *see also Bowers v. Transportacion Maritima Mexicana*, 901 F.2d 258, 263 (2d Cir. 1990); *Trs. of Local 531 Pension Plan v. Corner Distribs., Inc.*, 2008 WL 2687085, at *4 (E.D.N.Y. 2008) ("[P]laintiffs provided notice of defendant's default by serving defendant with a copy of the complaint that commenced this action."); *Board of Trs. of Trucking Emp. of North Jersey Welfare Fund v. Canny*, 900 F. Supp. 583, 591 (N.D.N.Y. 1995); *Miller v. ADCO Liberty Mfg. Corp.,* 2005 WL 2044901, at *3 (D.N.J. Aug. 24, 2005).

Smith argues that, although the complaint can serve as notice to withdrawing corporate entities, it cannot serve as notice to an individual learning for the first time that he may be individually liable. Smith also contends that, although the complaint "provided Mr. Smith with notice of non-payment of alleged withdrawal liability by Unique, it did not constitute separate notice to him regarding the amount of the alleged withdrawal liability and a schedule of proposed payments." (Smith Mem. Opp. Sum. Judg. 9; *see also* Def. Resp. at 10.) In support of this assertion, Smith relies on *Canario v. Lidelco, Inc.*, 782 F. Supp. 749 (E.D.N.Y. 1992). In *Canario*, the individual shareholders of the company had been served with the complaint, which sought to hold them personally liable for a default judgment against the company for withdrawal liability. The plaintiffs had also sent letters notifying the individuals that plaintiffs had determined that they were personally liable. The court held that the individuals were "separate entities, and accordingly entitled to separate notice." *Canario*, 782 F. Supp at 761. Smith argues that, pursuant to *Canario*, he should have received separate notice.

However, in *Canario*, the court did not address the question of whether a complaint can serve as notice. In a more recent case that directly addressed the issue, the court held that the complaint was sufficient notice on individual defendants. *See Board of Trs. of Trucking Emp. of North Jersey Welfare Fund v. Canny*, 900 F. Supp. 583, 591 (N.D.N.Y. 1995). In *Canny*, the court noted that, whether the defendants received letters demanding payment was irrelevant because "[a]ll that is required is actual notice by defendants, and by statute such notice must contain only the amount of the assessment, the schedule of payments, and the demand for payment. In this Circuit, receipt of a complaint containing such information has been held to constitute sufficient notice to trigger the arbitration requirement." *Id.* at 591, 592 (citing *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 261 (2d Cir. 1990) and discussing notice in the context of both defendant's motion to dismiss and plaintiff's motion for summary judgment). The court concluded that, because the complaint contained the relevant information, plaintiff "satisfied its burden regarding the issue of whether defendants received proper notice of the withdrawal liability assessment asserted against them by the plaintiff." *Id.* at 592. The court therefore granted plaintiff's motion for summary judgment.

The court's holding in *Canny* is consistent with the purpose of the notice requirement, which is to inform the individual or entity that it potentially will be liable for the withdrawal liability. The complaint here clearly achieved that goal. It did not simply provide Smith with notice of non-payment of alleged withdrawal liability by Unique. Rather, the complaint demonstrated that Plaintiffs seek to have Smith pay the amount of withdrawal liability on the basis that Smith was the member of a control group with Unique. Moreover, as in *Canny*, the complaint contained the relevant information, including the amount of withdrawal liability, schedule for payment, and demand for payment. Even though the schedule mentioned in the

complaint could not be complied with because the dates specified had passed, that fact is irrelevant. *See Unz*, 670 F. Supp. 2d at 225 (notice "literally complies" with the statute where it "sets out a schedule (albeit a schedule with which it is impossible to comply)"). Moreover, if Smith "took issue with the adequacy of the notice it received it was required to demand arbitration." *Id.* Therefore, the complaint constituted sufficient notice to Smith

Smith did not contest any other issues relating to withdrawal liability, and the elements of a withdrawal liability claim have been met. *See, e.g.*, *Canny*, 900 F. Supp. at 592 (noting that the three requirements to prove withdrawal liability are that defendant constituted an employer, received notice and failed to initiate arbitration). Therefore, Plaintiffs' motion for summary judgment against Smith is granted and Smith's motion for summary judgment is denied.

Plaintiffs' actuary calculated defendant's withdrawal liability to be $340,485.00, and the complaint seeks that amount from Smith. Smith is therefore liable for that amount. The law is unforgiving where, as here, an employer fails to take action in a timely manner after being notified. *See Amalgamated Lithographers of America v. Unz & Co. Inc*., 670 F. Supp. 2d 214, 222 (S.D.N.Y. 2009); *see also ILGWU National Retirement Fund v. Levy Bros. Frocks, Inc*., 846 F.2d 879, 886 (2d Cir.1988). Any dispute concerning the plan's assessment of liability had to be settled through arbitration, and an employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated. *See Daniello v. Planned Sys. Integration Ltd*., 2009 WL 2160536, at *5 (E.D.N.Y. July 17, 2009). Therefore, the court adopts Plaintiffs' sum despite the lack of evidence regarding its calculation.

In addition, the failure of an employer to make withdrawal liability payments within the time prescribed is treated in the same manner as a delinquent contribution, and courts therefore award to a prevailing plan interest on the unpaid contributions, reasonable attorney's fees, costs of the action, and liquidated damages as provided under the plan, up to 20% of the amount of liability. *See Unz*, 670 F. Supp. 2d at 230 (citing 29 U.S.C. §§ 1132(g)(2), 1451(b)). However, Plaintiffs have failed to provide the court with any calculations. To the extent that Plaintiffs are still seeking interest, liquidated damages and attorneys' fees, on or before March 16, 2011, Plaintiffs shall provide the court with the relevant calculations and an affidavit in support of attorney's fees. The court notes that, under 29 U.S.C. § 1399(c)(5), interest accrues from the due date of the first missed payment. Where notice of default is in the form of the complaint used to initiate the lawsuit, the interest is calculated from the date the defendant was served. *See Trs. of the Local 531 Pension Plan v. Corner Distribs., Inc*., 2008 WL 2687085, at *4 (E.D.N.Y. July 8, 2008) (citing *Bowers*, 901 F.2d at 265). Smith was served with the complaint on September 29, 2008. Smith was therefore obligated to make his first payment by November 28, 2008. Plaintiffs are instructed to use this date when calculating interest.

**C.      Claim Against Defendant United**

**1.      Plaintiffs' Motion for Summary Judgment Against United is Denied**

With regard to their lawsuit against United, Plaintiffs allege a successorship claim, seeking to hold United liable for ERISA contributions that Unique failed to pay. The magistrate judge concluded that Plaintiffs lack standing to bring their successorship claim in the district court because Unique's bankruptcy proceedings are ongoing, and Plaintiffs' claim is the property of Unique's bankruptcy estate. Plaintiffs object to this recommendation and argue that their

motion for summary judgment should be granted. The court therefore examines this claim *de novo*.

"Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded, *inter alia*, on the rights of the debtor and on certain rights of the debtor's creditors." *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989). "[W]here it is established that the underlying cause of action is property of a debtor's estate and only properly assertable by a trustee or debtor-in-possession, a creditor may not avail itself of the benefit of that cause of action unless the creditor obtains standing to commence such cause of action." *In re Enron Corp.*, 2003 WL 1889040, at *1 (Bkrtcy. S.D.N.Y. Apr. 17, 2003).

In determining whether a claim should be brought by the trustee or by the individual creditors, the court must consider whether the injury alleged is peculiar and personal to the claimant or is general and common to the corporation and creditors. *Id.* (citing *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1349 (7th Cir. 1987)). Where the harm suffered by the claimant is no different than the harm suffered by other creditors, the action belongs to the trustee or debtor-in-possession. *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 704 (2d Cir.1989). "The trustee or debtor-in-possession is given exclusive right to assert the claims to ensure fair and equitable treatment of all similarly situated creditors." *In re Enron Corp.*, 2003 WL 1889040, at *1. "Allowing the trustee or debtor-in-possession to pursue the claim avoids the prospect of creditors seeking to gain advantage over other creditors by pursuing the alter ego claims on a first-come, first-serve basis." *Id.* (citing *St. Paul Fire*, 884 F.2d at 700-01). Where claims are property of a debtor's estate, an individual creditor may not assert it until the trustee abandons the claim. *St. Paul Fire*, 884 F.2d at 701; *In re Enron Corp.*, 2003 WL 1889040, at *1.

Plaintiffs assert that "courts have treated ERISA alter ego and/or successorship claims as personal ones which creditors are not precluded from pursuing outside of bankruptcy court."[1] (Pl. Obj. 22.) Plaintiffs' generalized assertion misrepresents the more nuanced approach taken by courts when addressing the question of whether a claim is general or personal. Not all ERISA alter ego and successorship claims are alike, and the analysis of whether a claim is personal or general is not dependent on whether the claim is an ERISA claim.[2] *See, e.g., Maney v. Fischer*, 1998 WL 151023, at *2 (S.D.N.Y. Mar. 31, 1998) (plaintiffs did not have standing to assert their alter ego cause of action outside of the bankruptcy proceedings "simply because their cause of action is premised upon" ERISA). Similarly, not all alter ego or successorship claims are personal. *Compare Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc*., 945 F. Supp. 603, 607-08 (S.D.N.Y. 1996) (alter ego claim was personal); *Trs. of the Bricklayers Local 7 Pension Trust v. Stileitaliano Int'l*, 2004 WL 1774223, *4 (N.D. Cal. Aug. 6, 2004) (same), *with Gosconcert v. Hillyer,* 158 B.R. 24, 27-30 (S.D.N.Y. 1993) (alter ego claim was general); *In re Advanced Packaging and Products Co*., 426 B.R. 806 (C.D. Cal. 2010) (same). The relevant question is whether Plaintiffs' alter ego or successorship claims could be made by other creditors, which requires an examination of the allegations supporting the claims.

---

[1] In addition to Plaintiffs' successorship claim, Plaintiffs argue that their complaint properly asserts an alter ego claim despite their failure to specifically name that claim in their complaint, and they ask the court to deem the complaint amended. The court need not decide whether the complaint should be considered amended because, as described below, even if Plaintiffs assert an alter ego claim, the claim can be brought only by the trustee.

[2] Plaintiffs submitted a letter on February 2, 2011, informing the court of the Third Circuit's decision in *Einhorn v. M.L. Ruberton Constr.,* 2011 WL 182131 (3d Cir. Jan. 21, 2011). Plaintiffs argue that the case "suggest[s]" that an ERISA claim is more personal than general. However, none of the parties in *Einhorn* were in bankruptcy, and the court did not discuss whether ERISA claims are personal or general. Therefore, the case has no relevance to the facts here.

The case law demonstrates that an alter ego or successorship claim is personal, and thus can be asserted by an individual creditor, only if the conduct that supports claim is the same conduct that directly harmed the creditor in the underlying cause of action. For example, in *Trustees of the Bricklayers Local 7 Pension Trust v. Stileitaliano International*, 2004 WL 1774223, *4 (N.D. Cal. Aug. 6, 2004), plaintiffs filed a complaint against Domustyle, Inc. ("Domustyle") for delinquent ERISA contributions, and they successfully obtained a judgment. After plaintiffs were unable to collect on the judgment, they filed a lawsuit against Stileitaliano International ("Stileitaliano") and others, seeking to hold them liable as alter ego/successors of Domustyle. The court held that plaintiffs alleged a particularized injury because the ERISA injury was predicated upon individualized dealings and interactions with the alter ego defendants. Specifically, plaintiffs alleged that the alter ego defendants and Domustyle agreed to take actions together, such as subcontracting work and undercapitalizing Domustyle, to avoid paying ERISA contributions. *Id.* In sum, it was the undercapitalization of Domustyle that caused the ERISA violations, thus making the alter ego claim personal. *Id.*; *see also Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 607-08 (S.D.N.Y. 1996) (plaintiff asserted an individualized alter ego claim against director and president of bankrupt company because it alleged that he had participated "directly and actively" in infringing its patent).

In contrast, courts have found that alter ego claims are not particularized if the allegations in support of the alter ego claim are not associated with the underlying harm for which plaintiffs seek damages. *See In re Advanced Packaging and Products Co.*, 426 B.R. 806, 819 (C.D. Cal. 2010); *Maney*, 1998 WL 151023, at *2. For example, in *Advanced Packing*, Advanced Packing and Products Company ("APP") leased property from the plaintiff, and during the course of its

operations on the property, it stored hazardous substances, which were released on the property. Plaintiff alleged that, as a result of the environmental contamination, it incurred the cost of cleaning the property and the diminishment in the value of the property. Plaintiff filed lawsuits against APP and an alleged alter ego, PHJ Brands ("PHJB"). The court held that the alter ego claim was not personal because the conduct APP cited in support of the claim was not related to the contamination of the property. The alter ego claim did "not allege that PJHB directed APP's storage of hazardous substances at the property or that PJHB took action to render APP insolvent." *Id.* at 823. The court further stated that "it was not the undercapitalization of APP, the failure to observe corporate formalities, or OHJB's use of APP as an instrumentality for conducting business that caused contamination at [the] property." *Id.* The court thus concluded that plaintiff could not pursue the alter ego claim. *Id.*; *see also In re Landmark Fence Co., Inc.*, 2010 WL 4924739, at *3-4 (C.D. Cal. Dec. 3, 2010) (alter ego claim was general where "[t]he vast majority of [the] evidence relates to activities that affect all creditors equally.").

Other courts have similarly noted that an alter ego claim is general where the allegations supporting the claim were suffered by all other creditors, thus making the alter ego claim available to all creditors. *See Gosconcert v. Hillyer,* 158 B.R. 24, 27-30 (S.D.N.Y. 1993) (noting that all creditors have some contractual or tortious ground for their individual claims and thus share the same interest in the alter ego of the debtor); *Kalb, Voorhis & Co. v. Am. Fin. Corp.,* 1993 WL 180368, at *7 (S.D.N.Y. May 24, 1993), *aff'd*, 8 F.3d 130 (2d Cir. 1993); *In re Teknek, LLC,* 563 F.3d 639, 644 (7th Cir. 2009). Furthermore, as the court in *In re Teknek, LLC* stated:

> [T]he fact that the harm suffered by [the creditor] was patent infringement does not, by itself, make it a claim no other creditor could assert. By such logic, all creditors' claims would be personal to the specific creditor: a supplier's claim for payment on supplies would be deemed personal because no other creditor could claim payment for the same supplies; an employee's claim for his back pay would be personal to the extent that no other employee could claim back pay for that

employee's hours worked. If all such claims were "personal," no creditor would have to wait in line behind the bankruptcy trustee to assert her claims. With such segregation of claims, the bankruptcy system would collapse.

563 F.3d at 644.[3]  Therefore, in order to assert personal alter ego claims, creditors must assert allegations in support of their alter ego claims that are associated with the underlying harm for which they seek damages.

The circumstances in the present case are similar to facts of *Advanced Packing* and *Gosconcert*.  It was not the continuation of Unique into United that caused the ERISA violations. Although Plaintiffs argue that "United, in cahoots with Unique and its owner and his family, harmed Plaintiffs," (Pl. Obj. 21), there are no allegations in the complaint that their working "in cahoots" was in any way related to Unique's avoidance of ERISA contributions.[4]  For example, Plaintiffs have not alleged that United directed Unique's refusal to pay ERISA contributions or that United took action to render Unique insolvent for the purpose of avoiding ERISA contributions.  In fact, the judgment against Unique was for unpaid contributions for the period from July 1995 through January 2003, and United had not yet been formed at that time. Therefore, United could not have participated in the ERISA violations.

Thus, the facts in support of Plaintiffs' successorship or alter ego claim would be equally available to all creditors.  All creditors "have some contractual or tortious ground for their

---

[3] In *Teknek*, the claim was personal only because, unlike here, the creditor had a judgment against both the debtor and an independent non-debtor, thus making the claim unavailable to other creditors.  *Teknek*, 563 at 644.

[4] The cases cited by plaintiff are inapposite because they either fail to address the question of whether a claim is personal or general, *see Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323 (7th Cir. 1990), or they rest on unique facts which plaintiff has not shown in the present case, *see In re R.H.N. Realty Corp.*, 84 B.R. 356, 360 (Bankr. S.D.N.Y. 1988) (regarding the satisfaction of a claim of one particular creditor in a no-asset case in which the automatic stay had already been lifted); *In re Curtina Intern.*, 15 B.R. 993, 995 (Bkrtcy. S.D.N.Y. 1981) (bankruptcy court did not have jurisdiction over a creditor's alter ego claim where it was a "private controversy" that involved the bankruptcy).

individual claims against [the debtor], none of these creditors have been fully paid as a result of [the debtor's] insolvency, and all share the same general interest as [Plaintiffs] in the alter ego claim alleged in the Complaint." *Gosconcert v. Hillyer*, 158 B.R. 24, 29 (S.D.N.Y. 1993) (quoting *Kalb, Voohis & Co.*, 1993 WL 180368, at *7).

Moreover, Plaintiffs' contention that the trustee refused to pursue the claims against United, thus prejudicing Plaintiffs does not warrant finding that the claims are personal. The trustee for the Unique bankruptcy proceedings filed a motion to intervene in these proceedings in order to "protect his right to release claims asserted by the" plaintiffs against United. (Docket Entry 28, in 08-cv-3274, at 1.) The trustee argues that the claims "are an important asset of the estates and a material issue in settlement discussions between the Trustee and Smith." (*Id.* at 2.) The trustee also noted that he did not seek to intervene earlier because the parties were engaged in mediation. (*Id.* at 7.) Therefore, United's contention that the Trustee "refused" to pursue the claims is unjustifiable.

In sum, Plaintiffs' alter ego and successorship claims are general, and Plaintiffs are not permitted to pursue the claims while the bankruptcy trustee has them available to him.

### 2. The Complaint Against Defendant United is Dismissed

In light of his finding that Plaintiffs lack standing, in addition to recommending that Plaintiffs' motion for summary judgment against United be denied, the magistrate judge also suggested that the court may lack subject matter jurisdiction. The magistrate judge thus recommended that Plaintiffs be given the opportunity to demonstrate the existence of subject matter jurisdiction. Plaintiffs provided their basis for jurisdiction in their objections to the R&R.

In their complaint against United, Plaintiffs allege jurisdiction pursuant to 29 U.S.C. § 1132(e), which vests the district court with jurisdiction over actions brought under that ERISA

subchapter.  However, as the magistrate judge noted, merely pleading that a case arises under ERISA is insufficient on its own to confer federal subject matter jurisdiction.  *See Peacock v. Thomas*, 516 U.S. 349 (1996).

In *Peacock*, respondent Thomas filed an ERISA action for unpaid contributions against Tru-Tech, Inc., his former employer, and D. Grant Peacock, an officer of Tru-Tech.  Thomas obtained a judgment against Tru-Tech, but not Peacock, and was unable to execute the judgment. Thomas filed a subsequent action against Peacock, seeking to hold Peacock liable by piercing the corporate veil.  The Supreme Court held that the court lacked subject matter jurisdiction, and stated that "[p]iercing the corporate veil is not itself an independent ERISA cause of action 'but rather a means of imposing liability on an underlying action.'"  *Id.* at 354 (citation omitted). Like in *Peacock*, the complaint here does not allege that United violated ERISA.  It alleges that Unique used United to facilitate Unique's avoidance of ERISA obligations.  Therefore, the court must examine whether the complaint provides subject matter jurisdiction.

Plaintiffs argue that, contrary to *Peacock*, jurisdiction is proper because the aim here is not simply to pierce the corporate veil. Plaintiffs contend that, although the complaint "styles the claim as one for successor liability and does not specifically allege that United is Unique's alter ego, it does allege the factual elements of such a claim."  (Pl. Obj. 8 n.7.)  Plaintiffs further argue that the evidence demonstrates that United directly violated ERISA by continuing to operate as Unique's disguised alter ego or successor.  Plaintiffs contend that alter ego claims, unlike claims seeking to pierce the corporate veil, provide an independent basis for jurisdiction.

Even if the court were to accept Plaintiffs' attempt to amend the complaint, the court lacks jurisdiction over this matter.  Although the question of whether the court has jurisdiction

over alter ego claims pursuant to *Peacock* has not been clarified in the Second Circuit, courts in other circuits have addressed this question with varying results.

Some courts have found that alter ego claims are independent claims under ERISA and thus provide federal jurisdiction under *Peacock*. *See Brown v. Astro Holdings, Inc.*, 385 F. Supp. 2d 519, 525 (E.D. Pa. 2005) (an alter ego claim is an assertion of direct liability under ERISA and therefore supports federal subject matter jurisdiction); *Hudson County Carpenters Local Union No. 6 v. V.S.R. Constr. Corp.*, 127 F. Supp. 2d 565, 570 (D.N.J. 2000) (a claim of direct liability under a theory of alter ego was sufficiently distinct from a veil piercing claim to confer subject matter jurisdiction); *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031 (7th Cir. 2000). The holdings in these cases seem to conflict with *Peacock* itself, in which the Supreme Court indicated that its holding, though specifically addressing a veil-piercing claim, was broad enough to address the conflicting practices of several circuits that had involved alter ego claims. *See Peacock*, 516 U.S. at 352 n.2 (citing, as examples of circuit conflict the Court was resolving, *Sandlin v. Corporate Interiors, Inc.*, 972 F.2d 1212 (10th Cir. 1992), which had rejected jurisdiction over an alter ego claim, and *Blackburn Truck Lines, Inc. v. Francis*, 723 F.2d 730, 731-32 (9th Cir.1984), which had affirmed jurisdiction over an alter ego claim). This interpretation of *Peacock* is thus unpersuasive.

Other courts have addressed the jurisdictional viability of judgment enforcement based on alter ego claims without any suggestion that they should be treated differently than the veil piercing claim in *Peacock*. *See Futura Dev. of Puerto Rico, Inc., v. Estado Libre Asociado de P.R.*, 144 F.3d 7, 10 (1st Cir. 1998) ("Like the veil-piercing claim in *Peacock*, an alter ego claim involves an independent theory of liability under equity, complete with new evidence."); *c.f. Trust, Inc., v. First Flight Ltd.. P'ship*, 306 F.3d 126,133 (4th Cir. 2002) (noting that *Peacock*

held "that federal jurisdiction over claims leading to an underlying judgment provides no ancillary federal jurisdiction over a subsequent, post-judgment alter ego claim," but further noting that an independent basis for jurisdiction of district court existed under diversity of citizenship).

In a more nuanced approach, the Court of Appeals for the Tenth Circuit determined that the relevant question is not simply whether the claim is an alter ego or veil piercing claim. Rather, the court held that an independent basis for federal subject matter jurisdiction over an alter ego claim is necessary unless the allegations are based on the alter ego's direct role in the underlying ERISA violation at the time of the violation, and are not based on the vicarious liability derived solely from its relationship to the judgment defendant. *Ellis v. All Steel Const., Inc*., 389 F.3d 1031, 1035 (10th Cir. 2004). In *Ellis*, plaintiffs obtained a judgment against Interstate Builders, Inc. ("Interstate") for delinquent ERISA contributions. When collection efforts failed, plaintiffs filed an action against All Steel Construction Inc. ("All Steel") as an alleged alter ego or successor of Interstate. The district court found that All Steel was liable, and All Steel appealed. The Tenth Circuit vacated the district court's decision on the basis that the court lacked subject matter jurisdiction. The court stated:

> No separate federal jurisdictional basis is needed when ERISA liability is asserted directly against a second entity based upon that second entity's direct role in the ERISA violation. This principle applies regardless of whether ERISA liability is asserted upon the basis of an alter-ego or veil-piercing theory. On the other hand, if ERISA liability is asserted derivatively against a second entity that did not directly participate in the ERISA violation—as for example, where successor liability is asserted—then a separate basis for federal jurisdiction must be established.

*Id.* The court further stated that "the determinative factor is not whether ERISA liability is asserted against the second company based upon an alter-ego or veil-piercing theory; rather, the determinative factor is whether ERISA liability is asserted against the second company directly

based on the actions of the second company or whether liability is asserted only derivatively or vicariously against the second entity based solely upon the relationship between the second entity and the initial ERISA employer." *Id.* The court concluded that there were no allegations that All Steel exercised any control over Interstate's business, much less that it "so dominated Interstate's operations during the time the ERISA obligation [was incurred]," and that the facts regarding All Steel's involvement after Interstate ceased doing business would not have supported direct ERISA liability against All Steel. *Id.* at 1036. The court thus determined that the case required its own basis for jurisdiction. *Id.*; *see also Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers Local No. 14 v. A. Gallo Contractors, Inc.*, 2008 WL 942595, at *3-4 (E.D. Pa. 2008) (adopting the *Ellis* approach); *Operative Plasterers & Cement Masons Intern. Assoc. Local 8 v. AGJ Const., LLC*, 2009 WL 4796764, at *3 (D.N.J. Dec. 9, 2009) (adopting the approach in *Ellis* and noting that plaintiffs had named "certain non-judgment defendants that did not even exist at the time the ERISA violation occurred, and the connection to the underlying ERISA violation of some non-judgment defendants that did exist may be attenuated").

Although the Second Circuit has not directly addressed this issue, it has equated alter ego and veil piercing claims when discussing the reach of *Peacock*. In *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001), the court addressed whether fraudulent conveyance claims require an independent basis for jurisdiction and noted that "[s]ince *Peacock*, most courts have continued to draw a distinction between post-judgment proceedings to collect an existing judgment and proceedings, *such as claims of alter ego liability and veil-piercing*, that raise an independent controversy with a new party in an effort to shift liability." *Id.* at 106 (emphasis

added).  By grouping alter ego and veil piercing claims together, it appears that the Second Circuit agrees that courts do not have jurisdiction over alter ego claims seeking to shift liability.

Plaintiffs argue, in contrast, that "courts in this circuit have routinely recognized" jurisdiction over claims such as the ones here.  (Pl. Obj. 18.)  However, the cases cited are inapposite.  For example, *Brown v. Sandimo Materials*, 250 F.3d 120 (2d Cir. 2001), *Finkel v. S.I. Associates Co., Inc*., 2008 WL 2630297 (E.D.N.Y. June 30, 2008), *Burke v. Hamilton Equipment Installers, Inc*., 2006 WL 3831380 (W.D.N.Y. Oct. 16, 2006), *Bricklayers and Allied Craftworkers Local 2, Albany v. C.G. Yantch, Inc*., 316 F. Supp. 2d 130 (N.D.N.Y. 2003), and *LaBarbera v. C. Volante Corp*., 164 F. Supp. 2d 321 (E.D.N.Y. 2001) did not discuss the issue of subject matter jurisdiction after *Peacock*, and, in any event, the parties that committed the ERISA violations were defendants in the actions, thus providing jurisdiction.  *See N.Y. Dist. Council of Carpenters Pension Fund, v. KW Constr., Inc*., 2010 WL 3958799 (S.D.N.Y. Sept. 8, 2010) (supplemental jurisdiction existed where ERISA claims were brought against primary violator and alter ego).  Plaintiffs' other case contains no mention of *Peacock*, nor any analysis of whether the court had subject matter jurisdiction, and in any event, the alter ego committed its own ERISA violations, thus providing a basis for jurisdiction.  *See Jacobson v. Metro. Switchboard Co., Inc*., 2007 WL 1774911, at *8-9 (E.D.N.Y. June 18, 2007).

Plaintiffs also submitted a letter on January 12, 2011, informing the court of the Second Circuit's decision in *Retirement Plan of UNITE HERE Nat. Retirement Fund v. Kombassan Holding A.S.*, 2010 WL 5157156, at *3 (2d Cir. Dec. 21, 2010).  Plaintiffs argue that the Second Circuit held "that alter ego allegations form an independent basis of jurisdiction under ERISA." (Docket Entry 35.)  Plaintiffs' contention is meritless.  The Second Circuit did not address whether alter ego allegations form an independent basis of jurisdiction.  Indeed, the court

discussed neither jurisdiction nor *Peacock.* Moreover, the defendant's liability as an alter ego in that case was based on its direct role in the underlying ERISA violation at the time of the violation, thus distinguishing it from the facts of this case.

In sum, under either the approach in *Ellis*, or the more conservative approach in *Futura*, it is clear that the court lacks subject matter jurisdiction. Like the plaintiffs in *Ellis*, Plaintiffs in this case allege merely that United is a successor company to Unique and should be held liable for the original judgment. Plaintiffs argue that the alter ego/successor was part of an integrated enterprise designed to evade the predecessor company's obligations to the fund. (Pl. Obj. 19.) However, United did not exist as an alter ego of Unique at the time of the initial ERISA violation and thus could not have had a direct role in the underlying ERISA violation. *See, e.g.*, *AGJ Const.,* 2009 WL 4796764, at *3 (defendants could not have directly participated because they were not inexistence at the time). Therefore, the court does not have subject matter jurisdiction.

In light of this fact, plaintiff's motion for summary judgment is denied. Moreover, "[i]f subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action sua sponte." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). Therefore, the action against United is dismissed. In light the dismissal of the action against United, the trustee's motion to intervene in the action is denied as moot.

## CONCLUSION

Plaintiffs' motion for summary judgment against United is denied, and the case is dismissed. Smith's motion for summary judgment is denied. Plaintiffs' motion for summary judgment against Smith is granted. To the extent that Plaintiffs still seek interest, liquidated damages and attorneys' fees in their action against Smith, on or before March 16, 2011, Plaintiffs

shall provide the court with the relevant calculations and an affidavit in support of attorney's

fees.  Furthermore, the trustee's motion to intervene is denied as moot.

SO ORDERED.

Dated: Brooklyn, New York
      March 2, 2011

          /s/
_____
      DORA L. IRIZARRY
    United States District Judge
